# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **TERESA A. PEARSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO. 6:15-CV-0749-SLB** |
| ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Teresa Pearson brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying her application for supplemental security income ["SSI"].[1] Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

### I. PROCEDURAL HISTORY

Ms. Pearson filed an application for SSI on December 11, 2012. (Doc. 7-3 at R.12; *see also* doc. 7-6 at R.127.)[2] Her claim was denied initially. (Doc. 7-3 at R.12; doc. 7-4 at R.74.) Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"], which was held on October 23, 2013. (Doc. 7-3 at R.12; *see id*. at R.26.) After the hearing,

---

[1]The judicial review provision for a disability insurance benefits claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see* 42 U.S.C. § 1383(c)(3).

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. Reference to a page numbers in the Commissioner's record, ["R.___"], refers to the page number assigned to the record by the Commissioner.

the ALJ found that Ms. Pearson was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at R.20.)  In light of this finding, the ALJ denied Ms. Pearson's claim for SSI on March 17, 2014.  (*Id*.)

Ms. Pearson then requested the Appeals Council to review the ALJ's decision.  (*Id*. at R.6.)  On April 16, 2015, the Appeals Council "found no reason under [its] rules to review the [ALJ]'s decision.  Therefore, [it] denied [Ms. Pearson's] request for review," and the ALJ's decision became the final decision of the Commissioner.  (*Id*. at R.1.)

The present appeal was filed on May 1, 2015.  (Doc. 1.)  In her Complaint, Ms. Pearson alleges, "The decision of the Defendant that the Plaintiff is not disabled within the meaning of the Social Security Act is not supported by substantial evidence and applies an erroneous standard of law."  (*Id*. ¶ 5.)  Ms. Pearson, who is proceeding pro se, did not file a brief or otherwise inform the court of the specific grounds for her appeal.

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one, "limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to the Commissioner findings of fact. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  It "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

Ms. Pearson, the claimant, "bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)(citing 20 C.F.R. § 416.912(a)). On appeal, Ms. Pearson has presented neither argument nor citation to the Commissioner's record in support of her allegation that the Commissioner's denial of her claim for SSI benefits is not supported by substantial evidence and that the Commissioner applied incorrect legal standards. (*See* doc. 1 ¶ 5.) "However, this Court shows leniency to *pro se* litigants. Therefore, when reviewing the appeal of a *pro se* plaintiff, this Court will thoroughly review the evidentiary record and the ALJ's opinion to determine whether the ALJ's findings are

3

supported by substantial evidence." *Billings ex rel. Wells v. Colvin*, No. 2:12-CV-2777-LSC, 2014 WL 584313, *3 (N.D. Ala. Feb. 13, 2014)(citing *Christiansen v. McRay*, 380 Fed. Appx. 862, 863 (11th Cir. 2010)).[3]

### III. **DISCUSSION**

**A. THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for SSI. *See* 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for SSI benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The specific steps in the evaluation process are as follows:

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

define "substantial gainful activity" as "work activity that is both substantial and gainful."[4] 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).

The ALJ found that Ms. Pearson had not engaged in substantial gainful activity since December 11, 2012, the application date. (Doc. 7-3 at R.14.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of

---

[4]The regulation provides:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972 (emphasis added).

impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Pearson had "severe impairments [of] neurofibromatosis; depressive disorder, not otherwise specified; and anxiety." (Doc. 7-3 at R.14.) She found Ms. Pearson's claim of insomnia was not a severe impairment because it was controlled by medication. (*Id.*)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of her age, education, and work experience. 20 C.F.R. § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Pearson did not have an impairment or combination of impairments that met or medically equaled a Listing. (Doc. 7-3 at R.15.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it. 20 C.F.R.

§ 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 416.920(e). The claimant bears the burden of establishing that the impairment prevents her from performing her past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except she can occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. She can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday and sit, with normal breaks, for up to eight hours during an eight-hour workday.[5] She can frequently climb ramps and stairs and should never climb ladders, ropes or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to pulmonary irritants including fumes, dusts, odors, gases, and areas of poor ventilation. She should avoid all exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery. She can perform simple routine tasks requiring no more than short simple instructions and simple work related decision-making with few work place changes. She can have occasional interactions with co-workers and supervisors and no interaction with members of the general public.

(Doc. 7-3 at R.16-17 [footnote added].) The ALJ also found that Ms. Pearson, who was born in 1970, was a "younger individual" at the time she filed her application for benefits, (*id.* at R.18), and that she had "at least a high-school education" and could communicate in English, (*id.* at R.19).

---

[5] The ALJ found, in the alternative, that Ms. Pearson was limited to walking or standing for two hours in an eight-hour workday due to a fibroma on her foot. (Doc. 7-3 at R.19.)

8

The ALJ found that Ms. Pearson had past relevant work as a cashier-checker. (*Id.* at R.18.) However, based on the testimony of the vocational expert, the ALJ determined Ms. Pearson could not perform her "past work due to the level of interactions with the public." (*Id.*)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 416.920(c)(1). The regulations provide:

> If we find that your [RFC] is not enough to enable you to do any of your past relevant work, we will use the same [RFC] assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your [RFC] and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 416.960(c)(1).

Because the ALJ found Ms. Pearson could not perform a full range of light work, she consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that Ms. Pearson, considering her RFC and her vocational factors, could perform. The VE testified that an individual with Ms. Pearson's limitations and vocational factors

could perform the "light unskilled SVP 2[6] occupations including assembler (DOT No. 729.687-010) . . .; marker (DOT No. 209.587-034) . . . ; and food preparation worker/seafood preparer (DOT No. 311.674-014)."[7] (Doc. 7-3 at R.19; *see id*. at R.60 [footnote added].) Based on this testimony, the ALJ found Ms. Pearson could perform other work, and, therefore, she found Ms. Pearson had not been under a disability since the application date. (*Id*. at R.20.)

## B. REVIEW OF THE ALJ'S DECISION

Ms. Pearson did not file a brief in support of her appeal of the Commissioner's decision to deny her claim for SSI. Therefore, the court has reviewed the ALJ's decision to insure that it is based upon a correct application of the law and the findings of fact are supported by substantial evidence.

Based on its review of the record, the court finds that the ALJ correctly stated and applied the law applicable to Ms. Pearson's claims. (*See* doc. 7-3 at R.12-14, 15-16, 17, 19.)

---

[6]"The SVP level of a given job represents the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. SVP 2 indicates anything beyond short demonstration up to and including 1 month. An SVP of 1 or 2 corresponds to unskilled work as defined in the Commissioner's regulations." *Anderson v. Astrue*, Civil Action No. 2:11-0046-N, 2011 WL 3843683, *2 n.5 (S.D. Ala. Aug. 30, 2011)(citing, *inter alia*, SSR 00-4p, 2000 WL 1898704, *3 (2000))(internal quotations and citations omitted).

[7]Based on the testimony of the vocational expert, the ALJ also found that, if Ms. Pearson was limited to walking or standing for two hours during a normal eight-hour day she could perform the jobs of assembler, production table worker, and surveillance system monitor. (Doc. 7-3 at R.19-20; *see id*. at R.62.)

The court also finds that substantial evidence supports the ALJ's determination of Ms. Pearson's RFC.  At the hearing before the ALJ, Ms. Pearson testified that she was disabled due to her "nerve tumors," a condition called neurofibromatosis, as well as anxiety and depression.  (Doc. 7-3 at R.32.)  "Neurofibromatosis" is a genetic condition that causes fibromas or benign tumors to grow on nerves. *Wright v. Colvin*, No. 4:11-CV-3421-WMA, 2014 WL 518263, *1 (Feb. 7, 2014); *Richardson v. Honda Mfg. of Alabama*, 635 F. Supp. 2d 1261, 1267 (N.D. Ala. 2009).  When asked "what kind of symptoms [did she] have as a result of neurofibromatosis," Ms. Pearson replied that she "hurt a lot."  (Doc. 7-3 at R.33.)  When she is stressed, the tumors "flare up and [are] very noticeable."  (*Id*.)  She testified that some of the fibromas get painful "when they grow and they get hard."  (*Id*. at R.48-49.)  The fibromas are removed when they get painful and, according to the record, Ms. Pearson has had four fibromas removed.  (*See* doc. 7-8 at R.224, R.228.)  The medical records show her physical examinations were otherwise normal.  (*See id*. at R.228-31, R.237-38, R.246; doc. 7-9 at R.324, R.328-29.)

Ms. Pearson testified that she was self-conscious of her appearance due to the fibromas. (Doc. 7-3 at R.38.)  Her appearance caused her to be anxious around other people and depressed when she was ridiculed or questioned about her appearance.  (*Id*. at R.38, R.53.)  When asked what condition limits her ability to work the most, Ms. Pearson testified, "People looking at me like I'm a freak because of the neurofibromatosis." (*Id*. at R.52.)  Ms. Pearson also reported being abused as a child. (*Id*. at R.35, R.50-51; doc. 7-8 at R.217, R.260.)

Jerry Gragg, Psy.D., a licensed clinical psychologist, examined Ms. Pearson on two occasions – March 12, 2011, and February 8, 2013. (Doc. 7-8 at R.217-19; R.260-63.) In March 2011, Dr. Gragg noted that Ms. Pearson "did not appear particularly depressed" and there was no indication of "debilitating anxiety." (*Id.* at R.218.) He diagnosed Ms. Pearson with "adjustment disorder, mixed with anxiety (mild) and depressed mood (mild). (*Id.*) He stated:

> Based on a review of her documentation and her presentation in the current interview, it does not appear Ms. Pearson is now or has ever suffered from formal thought disorder, major affective disorder, or significant anxiety disorder. There is also no indication of personality disorder. However, she appeared to be experiencing some degree of depressive mood and some anxiety both of which appear[ ] secondary to situational factors.

(*Id.*) He found that her mild anxiety, her mild depressive mood, and/or both did not "rise to a level that would impede her employability" or "interfere with her ability to function in a work environment." (*id.* at R.219.)

On February 8, 2013, Dr. Gragg performed another psychological evaluation on Ms. Pearson. (*Id.* at R.260.) During this evaluation he noted "some mild indicators of Post-Traumatic Stress Disorder [PTSD]. (*Id.* at R.262.) Following this evaluation, he diagnosed Ms. Pearson with "depressive disorder, NOS likely under-treated except for any benefit she may be deriving from the anti-anxiety medication; [PTSD] mild; [and] (rule out) anxiety disorder, NOS, reasonably well treated with medications." (*Id.*) He found, "At present, Ms. Pearson does not appear to be a viable candidate for gainful employment as her depressive mood and anxiety likely would interfere with her ability to deal effectively with work-related

stresses." (*Id*. at R.263.) However, he noted that her suitability for employment should be reassessed following 6-8 months of "psychopharmacological and psychotherapeutic interventions." (*Id*.)

Ms. Pearson began treatment at Northwest Alabama Mental Health on April 3, 2013; her treatment plan included therapy and monitoring of her medications. (Doc. 7-9 at R.318-19.) The records show that Ms. Pearson did not keep her appointments following June 24, 2013, (*id*. at R.312), and her case was closed on September 11, 2013, (*id*. at R.320). She testified before the ALJ that her therapist –

> really didn't want to listen to . . . what was going on in my life and everything. He just was trying to tell me . . . do this and do that, and I've done everything like he was telling me to do.
>
> But, he just seemed like he wasn't interested in knowing things in the past because I thought psychiatrists, whenever you go see them, they're supposed to help you through problems like that.

(Doc. 7-3 at R.35.)

The ALJ found that Ms. Pearson had mild limitations in her activities of daily living, moderate limitations in social functioning, and mild to moderate limitations in concentration, persistence, and pace, (doc. 7-3 at R.15); the record contains no evidence of repeated episodes of decompensation of extended duration.

The court finds substantial evidence supports the ALJ's RFC, which assessed Ms. Pearson as capable of a limited range of light work with only occasional interaction with coworkers and supervisors and no interaction with the general public. (*See* doc. 7-3 at R.16-17.)

With regard to her subjective symptoms, the ALJ found:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The medical records fail to document a sufficient objective basis to accept the claimant's allegations resulting in functional limitations as wholly credible, in accordance with Social Security Rulings 96-4p and 96-7p. The undersigned has reviewed the claimant's subjective complaints in accordance with the guidelines provided by Social Security Ruling 96-7p and regulations 20 C.F.R. § 416.929.

Medical evidence shows the claimant has underlying medical conditions, but it does not support her allegations of severe and chronic limitation of function to the degree that it would preclude the performance of all substantial gainful activity.

The physical [RFC] allows for some restrictions resulting from neurofibromatosis, limiting her to work activities at the light level of exertion. However, treatment notes show that this condition only causes problems and requires surgical intervention when the nodules get painful and hard involving a nerve ending or muscle. The claimant has undergone surgery four times to remove the knots, and at the time of the hearing had more, including on the sole of her left foot, forearms, face, and the back of her hands. However, a review of the objective medical evidence does not indicate the claimant suffers from chronic or severe pain secondary to these nodules and the evidence further indicates the nodules do not have to be removed unless they are painful or causing discomfort, indicating any discomfort she experiences is episodic at best. The evidence does not indicate the claimant has experienced disabling symptoms associated with this condition for a period of twelve consecutive months.

As noted above, the undersigned disagrees with the State agency assessment of no "severe" mental impairment [(*see* doc. 7-4 at R.73)], but the undersigned discounts the debilitating findings of the consultative psychological examiner, Dr. Gragg, of February 2013. He noted that the symptoms of depression and anxiety are related to social stressors [–] embarrassment about the nodules on her body and her history of childhood mistreatment. Dr. Gragg reported that

> the claimant stated that her physical condition has caused her some difficulty in social settings because she has been ridiculed. However, he further observed the claimant should not be subject to ridicule if she wore a long sleeved shirt. [(Doc. 7-8 at R.260-63.)] The claimant's anxiety also is reportedly improved with medication. [(*See* doc. 7-9 at R.324.)] Because the claimant's residual functional capacity limits her exposure to no interactions with members of the general public and simple routine tasks, these restrictions should significantly eliminate the claimant's social anxiety related to being self-conscious secondary to her skin condition.

(Doc. 7-3 at R.18.)

The court finds the ALJ's assessment of Ms. Pearson's RFC, including the ALJ's determination of limitations caused by subjective symptoms, such as pain, is supported by substantial evidence in the record. Her finding that Ms. Pearson can make the adjustment to other work is supported by the VE's testimony based on the ALJ's hypothetical question that included all the limitations caused by Ms. Pearson's impairments. (Doc. 7-3 at R.59-60.)

Therefore, based on its review of the administrative record, the court finds that the ALJ's factual findings are supported by substantial evidence and that she correctly applied the law to those facts. Therefore, the Commissioner's decision denying Ms. Pearson's claim for SSI benefits will be affirmed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 31st day of March, 2017.

_____
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE